IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA LEEPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1401-HE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED**.

I.   **PROCEDURAL BACKGROUND**

Plaintiff's applications for benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-26). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the sequential evaluation process required by agency regulations. See *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2010, the alleged disability onset date. (TR. 17). At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, hypertension, obesity, status carpal tunnel release, bilateral shoulder disorders, hearing disorder, generalized anxiety disorder, and depressive disorder. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18).

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (TR. 24). The ALJ further found Plaintiff had the residual functional capacity (RFC) to lift and/or carry 20 pounds occasionally and 10 pounds frequently and that she could sit, stand, and walk for about six hours in an eight-hour workday (TR. 19). He also found Plaintiff could not climb ladders, ropes or scaffolds, could occasionally reach overhead, and could frequently handle and finger. (TR. 19). He found that Plaintiff should avoid concentrated exposure to extreme cold and vibrations, and that while she could respond appropriately to supervisors, co-workers, and usual work situations, she should have only occasional contact with the general public. (TR.

19). Finally, the ALJ found Plaintiff could perform work where oral communication was not an essential job function. (TR. 19).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a series of questions to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 48-51). Given the limitations, the VE testified that Plaintiff could perform the light, unskilled occupations of office helper, merchandise marker, and laundry worker, which existed in significant numbers in the national and regional economies. (TR. 25-26). The ALJ adopted the testimony of the VE and concluded that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 25-26). Accordingly, the ALJ determined that Plaintiff was not disabled from April 30, 2010, the alleged onset date, through August 26, 2013, the date of the decision. (TR. 26).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ: (1) failed to fully consider impairments of sleep apnea and incontinence when assessing the RFC and (2) erred in failing to present a hypothetical question to the VE which also included those limitations.

## IV.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation and internal quotation marks omitted).

## V. THE RFC DETERMINATION

Plaintiff first argues that the ALJ failed to properly evaluate the combined effect of her sleep apnea and incontinence when assessing her RFC. (ECF No. 16:7-11). The Court should reject this argument.

### A. ALJ's Duty in Assessing Plaintiff's RFC

When assessing the RFC, "the ALJ must consider the combined effects of all medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). A medically determinable impairment is an "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508; 416.908. The existence of a medically determinable impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* Upon finding that one or more medically determinable impairments exists, the RFC assessment will consider "only functional limitations and restrictions" stemming therefrom, including the impact of any related symptoms. Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, Westlaw op. at 1 (July 2, 1996). Absent an allegation or evidence in the record of a limitation or restriction concerning a

specific functional capacity, the ALJ "must consider the individual to have no limitation or restriction" in that regard. *Id.*

Ms. Leeper alleges that during the RFC assessment, the ALJ failed to fully consider her incontinence and sleep apnea. (ECF No. 16:6-11). The Court should reject Ms. Leeper's arguments because the incontinence was not a "medically determinable impairment" and no evidence exists that Plaintiff suffered limitations or restrictions resulting from the sleep apnea.

### 1. Incontinence

The evidence concerning Plaintiff's incontinence is limited to a statement from Plaintiff's daughter that her mother "is incontinent and wets herself." (ECF No. 16:7). But the medical record shows that Plaintiff repeatedly denied suffering from incontinence to several medical professionals. (TR. 287, 399, 557). And at the hearing, Plaintiff testified her incontinence was a problem only if she had to "go somewhere for very long." (TR. 41).

As stated, a "medically determinable impairment" must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Thus, Ms. Leeper's daughter's allegation alone is insufficient to establish that the incontinence was a "medically determinable impairment." *See Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1042 (D. Colo. Feb. 25, 2015) (noting that a claimant's report of symptoms was "clearly insufficient to establish the existence of a medically determinable

impairment."); *Maiorano v. Astrue*, 930 F. Supp. 2d. 1240, 1250 (D. Colo. Mar. 13, 2013) (noting that when impairments were not "medically determinable, . . . they need not be considered in formulating Plaintiff's RFC.") As a result, the ALJ had no duty to consider Plaintiff's incontinence in assessing the RFC. *See Wells v. Colvin*, 727 F.3d. 1061, 1065 (10th Cir. 2013) (noting that in the RFC determination, the ALJ must consider the combined effects of *medically determinable impairments*) (*emphasis added*).

### 2. Sleep Apnea

In support of her argument that the ALJ failed to properly consider her sleep apnea in the RFC assessment, Ms. Leeper relies on five medical reports which state that she suffers from obstructive sleep apnea syndrome. (TR. 397, 400, 485, 493, 509). The ALJ acknowledges the statements from Dr. Carpenter and Dr. Darbe, and further notes that Plaintiff received treatment in the form of a CPAP machine. (TR. 23). Beyond this evidence, which the ALJ acknowledges, Plaintiff does not argue that she suffers from any work-related limitations or restrictions as a result of the sleep apnea. Absent any work-related limitations or restrictions, the ALJ had no duty to further discuss the sleep apnea in the RFC. *See Wells v. Colvin*, 727 F. 3d. 1061, 1065, n. 3 (10th Cir. 2013) (noting that a medically determinable impairment which imposed no restrictions on claimant's work activities "obviate[d] the need for further analysis at step four."); *Bronson v. Astrue*, 530 F. Supp. 2d. 1172, 1186 (D. Kan. Jan. 8, 2008) (unpublished op.) (rejecting a claim that the ALJ erred in failing to include limitations in the RFC,

6

noting that the plaintiff "d[id] not point to specific limitations . . . in the evidence which should have been included in the RFC assessment.").

### B. The Hypothetical to the Vocational Expert

At step five, the ALJ adopted the testimony of a VE who stated that Plaintiff could perform the jobs of office helper, merchandise marker, and laundry worker. (TR. 25-26). Ms. Leeper argues that this testimony was tainted, because it was based on hypothetical questions to the VE which were, in turn, based on a faulty RFC determination. (ECF No. 16:11-12). The Court should reject Plaintiff's argument.

It is well-established that an ALJ's hypothetical question to a VE "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The hypothetical need only include those limitations in which the ALJ finds are established by the evidence. *Id.* As discussed, the ALJ did not err in his RFC assessment by failing to include limitations or restrictions relating to incontinence and sleep apnea because the record lacked any evidentiary support that such limitations or restrictions existed. Accordingly, the Court should reject Plaintiff's argument concerning the hypothetical questions posed to the VE which is premised on an alleged error in the RFC; *Wilson v. Barnhart*, 68 Fed. Appx. 169, 2003 WL 21419684, Westlaw op. at 4 (10th Cir. June 20, 2003) (unpublished op.) (rejecting plaintiff's claim that that the ALJ erred by failing to include certain limitations in the hypothetical to the VE because there was "insufficient evidence in the record to support [any] exertional limitations.").

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 25, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 11, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE